OPINION
{¶ 1} Defendant-appellant, George A. Jakubisn, appeals from the decision of the Mahoning County Court of Common Pleas, Juvenile Division, ruling on several issues concerning child support, visitation and a contempt citation.
 {¶ 2} The present case has been ongoing between appellant and plaintiff-appellee, D. Michelle Minamyer, since 1994. The parties were previously before this court in Minamyer v. Jakubisn (Sept. 18, 2000), 7th Dist. No. 99 CA 66. A recitation of the facts as set out in that case is helpful here.
 {¶ 3} "In 1994, appell[ee] filed a paternity complaint naming appell[ant] as the father of her two-year-old child. Appell[ee] sought continuing and back child support. After two genetic tests, appell[ant] stipulated his parentage and requested visitation.
 {¶ 4} "The court heard the case on July 6, 1998. Appell[ee] did not object to visitation but voiced concern over the child's emotional transition at the commencement of visitation due to appell[ant]'s unfamiliarity.
 {¶ 5} "On September 21, 1998, the court designated appell[ee] the residential parent and awarded child support with some arrearage. The court also granted visitation to appell[ant] in an amount no less than its standard long distance visitation order.
 {¶ 6} "However, the court did not immediately implement the visitation order. Instead, the court set a hearing and requested written pleadings, in which the parties could propose a method of implementing visitation that would assist the child's passage from parent to parent.
 {¶ 7} "The hearing was set for November 13, 1998. The day before the hearing, appell[ee]'s counsel withdrew. Hence, the court reset the hearing for December 8, 1998; however, due to a telephone request from appell[ee], the court continued the hearing date. On December 28, 1998, the court released a judgment entry that set the hearing for January 15, 1999. This entry incorrectly recited appell[ee]'s Arizona address as `Apt. 408' rather than `Apt. 108.'
 {¶ 8} "On January 15, 1999, the courthouse was closed due to inclement weather. In a January 22, 1999 judgment entry, the court reset the hearing for February 12, 1999.
 {¶ 9} "On January 25, 1999, the court's December 28 judgment entry was returned to the clerk unopened. On February 10, 1999, the court's January 22 judgment entry was returned to the clerk with a notation that the address was incorrect. Nevertheless, the court proceeded with the hearing on February 12, 1999. Obviously, appell[ee] did not attend.
 {¶ 10} "On February 19, 1999, the court released a judgment entry stating that its standard long distance visitation order is effective immediately. This entry and the prior returned entries were not mailed to appell[ee] until March 2, 1999. Oddly, the docket entry reflecting this service contains four exclamation points after it." Id.
 {¶ 11} We held that appellee was not served with notice and was denied her opportunity to be heard prior to the hearing and the trial court's issuing of the parenting decree regarding implementation of visitation. Thus, we reversed the trial court's February 12, 1999 judgment and remanded the case for a new hearing on the implementation of visitation.
 {¶ 12} While case 99 CA 66 was pending before this court, appellant continued to file motions in the trial court, which resulted in the following judgments: (1) a finding of contempt against appellee for violating a court order, which was under appeal; (2) the impounding of support payments and arrearages due to appellee while the case was pending appeal; (3) an order suspending support payments until further order of the court; and (4) a fine, jail sentence, order to pay appellant's attorney $250.00 and issuance of a warrant against appellee for violating the court order that was under appeal.
 {¶ 13} After this court's September 18, 2000 decision, the juvenile court reset the case for November 15, 2000. At that hearing, appellee failed to appear. The court ordered that the parties implement the standard long-distance visitation order in spite of the fact that appellee filed with the court the same day a written request for a hearing by telephone. Appellee was not represented at the November 15 hearing. After receiving the court's November 15 order, appellee filed a motion requesting the release of the escrowed funds. The court set the motion for a hearing on January 16, 2001. The hearing was not held due to the death of the juvenile court judge earlier that month and was continued until a visiting judge was appointed.
 {¶ 14} The case proceeded to a hearing on September 13 and 14, 2001. In its October 16, 2001 judgment entry, the court ordered the following. A long-distance visitation plan with a breaking-in period for appellant and the minor child. The Child Support Enforcement Agency is to release the support payments that the court had previously escrowed because the payments were held in violation of R.C. 3109.05. Appellant's income tax refunds shall be applied to his arrearages. The finding of contempt against appellee is vacated because the court held her in contempt of violating a court order that was under appeal and subsequently reversed. Appellant's support payments that were ordered on September 22, 1998 are reinstated. Appellee shall dismiss her collection proceedings against appellant in Arizona. Appellant's motion to withdraw his admission of paternity is denied.
 {¶ 15} It is from this judgment that appellant filed his timely notice of appeal on November 13, 2001.
 {¶ 16} At the outset, we should note that appellant has failed to comply with App.R. 16(A)(7) which states that the appellant's brief shall contain, "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Appellant has not included a single case citation or reference to a statute to support his assigned errors. Nonetheless, in the interest of justice, we will consider his assignments of error.
 {¶ 17} Appellant raises two assignments of error, the first of which states:
 {¶ 18} "THE VISITING JUDGE ABUSED HIS DISCRETION IN REVISITING THE COMPLETE CASE AND REVERSING JUDGE McNALLY'S RULINGS INDISCRIMINATELY."
 {¶ 19} Appellant alleges that the visiting judge, Judge Demis, ignored the rulings of the previous judge, Judge McNally, in this case. He contends that Judge McNally had already found appellee in contempt and that Judge Demis should not have reexamined this issue. Appellant further argues that Judge Demis abused his discretion in making the other rulings in the October 16, 2001 judgment entry.
 {¶ 20} The abuse of discretion standard of review governs matters surrounding child custody. Booth v. Booth (1989), 44 Ohio St.3d 142,144. Abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 21} After reviewing the record, it is clear that the trial court did not abuse its discretion in entering its October 16, 2001 judgment entry. This case has been in the juvenile court since appellee filed a paternity suit in 1994 against appellant. From the record, it appears that the parties have been in a constant, heated battle with each other while their daughter has been the one to pay the price for her parents' continuous legal war. It took approximately four years before paternity was established. Up until that time, the child, who was age six, had never met her father. By this time, appellee and the child had moved to Arizona. Appellant and the child finally met for a half-an-hour. It appears that the child has not seen appellant since that time. This unfortunate circumstance is the result of the parties' he-said, she-said feud. Furthermore, as a direct result of the parties' animosity towards each other, the trial court ordered appellant's child support payments first to be held in escrow and then suspended appellant's child support obligation.
 {¶ 22} Consequently, the child has been deprived of her father and of her child support payments and has been at the center of an eight-year legal debacle. After Judge McNally passed away, Judge Demis took over this case, held a hearing to determine the issues that were still in dispute between the parties, and attempted to put an end to their contemptuous battle by placing the child's best interest first. The orders he put on settle the issues that each party disputed.
 {¶ 23} Appellant has not provided us with any evidence of how Judge Demis abused his discretion in entering his October 16 judgment entry. He simply makes this conclusory statement. The only order appellant offers an argument against is the court's order vacating the previous finding of contempt against appellee. The court found that since the contempt citation resulted from an alleged violation of a court order that was under appeal and subsequently reversed, the previous contempt finding against appellee was a nullity. Appellant argues that Judge Demis did not have the authority to vacate the contempt finding of Judge McNally. What appellant fails to consider, however, is that both orders were the orders of the juvenile court, not of individual judges. Furthermore, although the finding of contempt was in effect at the time the court issued it, once this court reversed the order which appellee was accused of violating, the finding of contempt was set aside.
 {¶ 24} Based on the foregoing, appellant's first assignment of error is without merit.
 {¶ 25} Appellant's second assignment of error states:
 {¶ 26} "THE VISITING JUDGE WAS BIASED AGAINST THE DEFENDANT-APPELLANT."
 {¶ 27} Appellant argues that Judge Demis was prejudiced against him. He cites several examples from the transcript to support his position as follows:
 {¶ 28} "THE COURT: You think that's a ploy that she said she's willing to go forward? I mean, you both got the opportunity to go forward. I'll give you the opportunity to go forward if you figure it's a ploy." (Tr. 48).
 {¶ 29} "THE COURT: Wait a minute. You're going to listen to me because I've been listening to you. If you don't like it, put it in the record. She came in here making 36,000 a year. She didn't sit here and say whatever I made ten years ago, five years ago. She came in here — she seems like she's at least a responsible person, and we're trying to make her look like she's a law-breaking — she's avoiding the process, she's avoiding the jurisdiction of this court, and I cannot buy into that yet, see, because I don't feel that I'm going to come down hard on her the way you want to come down hard. I don't want to come down hard on her." (Tr. 118-19).
 {¶ 30} "THE COURT: * * * I don't want to deprive you of your right to cross-examine, but you've got a way of antagonizing people. But go ahead. Put it on the record. I'm thinking we're at the point we'll be able to submit this matter. Go ahead. I'll give you a free field on it, Mr. Sowinski. Go to it, buddy. Go to it." (Tr. 216-17).
 {¶ 31} After reviewing the entire transcript, it is obvious that Judge Demis was not biased against appellant. Although in some instances he makes a sarcastic comment or gives appellee the benefit of the doubt, there is no evidence that he acted in a way that prejudiced appellant. There are also occasions where Judge Demis gives appellant the benefit of the doubt and makes rulings in his favor. See, Tr. 124-25 (objection in appellant's favor); Tr. 68 (In reference to appellant, the court stated, "I see he's a hardworking man. He obviously must be. He makes pretty good money. He's a married man interested in his child. He expressed that interest."); Tr. 61 (The court remarked to appellant's counsel, "* * * you were here, and you were asserting all of the rights of your client which I give you — I commend you for.")
 {¶ 32} Additionally, when appellant's counsel insinuated that Judge Demis was biased, the Judge replied:
 {¶ 33} "I don't try to administer any case in court that I took a bias. I got two sides to every story, and I got an innocent child here involved, and I'm trying to make the most of it without trying to escalate the problems, whatever it may be, between these two people, and I've tried to impress that on you, but you don't — it just seems like you guys are more intent on having differences of opinion. I don't have a difference of opinion." (Tr. 120-21).
 {¶ 34} Thus, the court expressly stated that it had only the child's best interest in mind and was not biased in favor of either party.
 {¶ 35} Accordingly, appellant's second assignment of error is without merit.
 {¶ 36} For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., and Reader, J., concur.